Daniel T. Huang, Esq. (Bar No. 185948)
Haven Law Group, APC
1111 Corporate Center Drive, Suite 106
Monterey Park, CA 91754
(323) 318-2601
daniel@havenlawgroup.net

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

HUGO ROLANDO GOMEZ OSORIO,

          Plaintiff,

      vs.

UNITED STATES OF AMERICA; UNITED
STATES IMMIGRATION AND CUSTOMS
ENFORCEMENT; DOES 1-100,

         Defendants.

Case No. _____

Agency file number: A# 070-803-207

**FTCA AND BIVENS COMPLAINT FOR**

**DAMAGES AND EQUITABLE RELIEF**

-1-
COMPLAINT FOR DAMAGES

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Ileto v. Glock Inc.*,
   349 F.3d 1191 (9th Cir. 2003)................................................................10

**STATE CASES**

*Martinez v. Pacific Bell*,
   225 Cal. App. 3d 1557 (Cal. Ct. App. 1990)............................................10

*Nally v. Grace Community Church*,
   47 Cal. 3d 278 (Cal. 1988) ......................................................................11

**FEDERAL STATUTES**

Title 28 U.S.C. § 1331.........................................................................................3

Title 28 U.S.C. § 1343(a)(3) ..............................................................................3

Title 28 U.S.C. § 1343(a)(4) ..............................................................................3

Title 28 U.S.C. § 1346........................................................................................3

Title 28 U.S.C. § 1402(b)....................................................................................3

Title 8 U.S.C. § 1182(a)(9)(b)............................................................................5

Title 28 U.S.C. § 1346(b)...............................................................8, 9, 11, 12, 12

Title 28 U.S.C. § 2671-2680 .............................................................................8

Title 8 U.S.C. § 1227(a)(2) ................................................................................9

**STATE STATUTES**

Cal. Civil Code § 52.1.........................................................................................15

**OTHER AUTHORITIES**

Pub. L. No. 105-100, tit. II, 111 Stat. 2160, 2193 (1997) ...............................5

Plaintiffs, on information and belief, allege as follows:

## INTRODUCTION

1. This case concerns the unlawful arrest, immigration detention, and deportation of Plaintiff Pastor Hugo Rolando Gomez Osorio ("Pastor Hugo") by Defendant United States Immigration and Customs Enforcement ("ICE").

## JURISDICTION AND VENUE

2. This is a civil rights action in which Plaintiff seeks damages, both compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys' fees, and such other and further relief as this court deems equitable and just.

3. Jurisdiction is conferred upon this court by 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1346. This is an action seeking redress for the violation of the Plaintiff's constitutional and civil rights.

4. On March 5, 2025, Plaintiff submitted an Administrative Tort Claim to the United States Department of Homeland Security.[1] By letter dated May 28, 2025, Plaintiff was informed by Adam Boyd, Associate Legal Advisor of the United States Immigration and Customs Enforcement, that his administrative claim was denied.[2] Plaintiff has therefore exhausted all available administrative remedies.

5. Venue is properly within this District under 28 U.S.C. § 1402(b) as the acts and omissions that are at the core of this Complaint occurred within this District.

## JURY TRIAL DEMAND

6. Plaintiff hereby demands a trial by jury of all issues in this action that are so triable.

## PARTIES

7. Plaintiff is a citizen of Guatemala who, prior to his unlawful detention and subsequent physical removal to Guatemala, had been living in the United States as a Lawful Permanent Resident ("LPR") since December 11, 2003.[3]

8. Defendant United States of America is the appropriate defendant under the Federal Tort Claims Act.

---

[1] Exhibit ("Exh.") 1, ICE letter for receipt of FTCA letter, 03-11-2025, page ("p.") 21
[2] Exh. 2, ICE letter rejecting FTCA claim dated 5.28.25, page 22
[3] Exh. 11, Notice to Appear ("NTA") para. 12, at page 56

COMPLAINT FOR DAMAGES

9.      Defendant United States Immigration and Customs Enforcement

10.     Defendants Does 1-100 are any and all officers of Defendant ICE, or other agencies of Defendant United States of America, involved in the unlawful arrest, detention, and deportation of Plaintiff. The true names and capacities of these individuals are unknown to Plaintiff and are thus sued under fictitious names. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of the DOE defendants when they have been ascertained. Each of the fictitiously named defendants is responsible in some manner for the conduct or liabilities alleged herein.

## STATEMENT OF FACTS

11.     On September 2, 1959, Pastor Hugo was born in Guatemala.[4]

12.     On May 8, 1981, Pastor Hugo earned a certificate in accounting from the Guatemalan Ministry of Education.

13.     Between September 1, 1981, and February 2, 1986, Pastor Hugo was a member of the 4th Corps Unit of the Guatemalan National Police.

14.     Pastor Hugo's duties as a police officer included completing paperwork for individuals who had been arrested and supervising six (6) agents. This was a purely administrative position.  Pastor Hugo did not go on any patrols.

15.     On July 4, 1987, Pastor Hugo entered the United States without inspection from Mexico.[5]

16.     Pastor Hugo came to the United States to escape violence in Guatemala, as he was a potential target of various leftist guerrillas because of his past affiliation with the National Police.

17.     On January 29, 1991, Pastor Hugo married Leonor Colindres, now known as Leonor Gomez. The two remain married to the day of this Complaint's filing. They have three children together, all of whom are U.S. Citizens and reside in the United States. Leonor Gomez, who entered the U.S. with Pastor Hugo from Mexico, is now a U.S. citizen.[6]

---

[4] Exh. 11, NTA, paragraph ("para.") 2, at p. 56
[5] Exh. 11, Id., para. 7, p. 56
[6] Exh. 8, Marriage certificate, p. 50

-4-
COMPLAINT FOR DAMAGES

18.     On June 9, 1993, Pastor Hugo submitted an asylum application to the United States Citizenship and Immigration Services (USCIS). A decision on this application was never issued. Under 8 U.S.C. §1182(a)(9)(b)(iii)(II), Pastor Hugo remained in a period of authorized stay and did not accrue unlawful presence during the pendency of his asylum application.

19.     Recognizing the validity of the asylum claims of Guatemalans fleeing political persecution as a result of that country's civil war, Congress enacted the Nicaraguan Adjustment and Central American Relief Act (NACARA) on November 19, 1997. Pub. L. No. 105-100, tit. II, 111 Stat. 2160, 2193 (1997), as amended by Pub. L. No. 105-139.

20.     On or about August 6, 2003, Pastor Hugo applied for relief pursuant to the Nicaraguan Adjustment and Central American Relief Act (NACARA).[7] The United States Citizenship and Immigration Services fully adjudicated his application, including an interview.

21.     On December 11, 2003, Pastor Hugo was granted LPR status under NACARA.[8]

22.     On or about April 7, 2009, Pastor Hugo applied for naturalization.  The USCIS never adjudicated his N400 application.

23.     On August 16, 2019, Pastor Hugo was arrested by ICE and taken to Adelanto Detention Center, where he remained for nearly four years.

24.     While in detention, Mr. Gomez suffered physical separation from family members, loss of affection from his daughters, his gardening design business, verbal insults, insufficient medical attention, sleep deprivation, and was served expired food. His reputation in the community has been destroyed due to the media coverage and press releases by ICE.  To date, ICE has continued to post the press release regarding his removal on the agency's website.[9]

25.     On February 3, 2021, Pastor Hugo's asylum application and Convention Against Torture (CAT) claim were denied by the Immigration Judge (IJ). The Immigration Judge then issued an order of removal.[10]

---

[7] Exh. 11, NTA, para. 9, at p. 56
[8] Id., para. 12, p. 56
[9] Exh. 10, ICE press release re removal of Pastor Hugo, March 14, 2023, pages 52-53
[10] Exh. 7, BIA decision, pages ("pp.") 43-44

COMPLAINT FOR DAMAGES

26.     On October 20, 2021, Pastor Hugo filed a motion to reopen before the BIA based on ineffective assistance of counsel and other due process violations. Pastor Hugo also filed a motion to stay the removal on this date.

27.     The IJ relied on unauthenticated foreign records and an Interpol Red Notice as the basis for removal.[11]

28.     On October 28, 2022, INTERPOL issued a certificate to confirm that Pastor Hugo is not subject to a Red Notice.

29.     On November 4, 2022, the INTERPOL Commission for the Control of INTERPOL's Files (INTERPOL CCF) canceled the Red Notice for failure to comply with the evidentiary rules.[12]

30.     The records furnished by ICE (the records) allege Mr. Gomez's participation in February 1984 events leading to the arrest of activist Edgar Fernando Garcia (Edgar Garcia). The records also included a 2009 warrant issued in Guatemala.[13]

31.     The records the IJ relied on were stolen documents obtained unofficially by a U.S.-based non-governmental organization, the National Security Archive.

32.     The documents were turned over to the Historical Archive of the National Police in Guatemala, but they have not been authenticated, and it is unclear whether the proper chain of custody has been respected in the transfer of the documents.

33.     The only information that is known is that the documents in the National Police's possession were archived and preserved by GAM ("Grupo de Apoyo Mutuo"), a nonprofit founded by the former spouse of Edgar Garcia, Nineth Montenegro.  Ms. Montenegro is a well-known, influential political figure in Guatemala. She served as a Deputy Member in the Congress of Guatemala for eight consecutive terms from 1996 to 2020, totaling 24 years.

34.     The documents contain known contradictions and discrepancies with other evidence in the record. For example, in the documents, there is a statement from Danilo Chinchilla Fuentes

---

[11] Exh. 6, INTERPOL Red Notice, p. 40; Exh. 7, BIA decision, p. 44
[12] Exh. 5, CCF decision cancelling red notice (11/04/2022), p. 39
[13] Exh. 11, Notice to Appear issued by DHS (8/20/2019), para. 11, p. 56

that was given to GAM that says that Mr. Gomez was a member of the Fifth Corps Unit. This evidence is significant because the Fifth Corps Unit was also known as the BROE, a unit linked to death squad activities during the 1990s.

35.    On March 5, 2023, ICE issued a decision to remove Pastor Hugo to Guatemala, where he was born.[14]

36.    On March 7, 2023, Pastor Hugo was removed from the United States.[15]

37.    Upon his removal to Guatemala, Pastor Hugo was detained by authorities and placed in criminal proceedings.

38.    On September 21, 2023, the First Court of First Instance for Criminal, Narco Activity, and Crimes against the Environment of the Department of Guatemala dismissed its case against Pastor Hugo, finding that there was no evidence of his participation in the February 18, 1984, events surrounding the disappearance of political activist Edgar F. Garcia.

39.    On November 29, 2023, the Court of Appeals in Guatemala affirmed the lower court's dismissal and declared that the Public Ministry's appeal was unfounded and baseless.

40.    The findings of the Guatemalan courts in 2023 are consistent with the decision of the INTERPOL CCF that canceled the Red Notice against Pastor Hugo on November 4, 2022.[16]

41.    In January of 2024, Plaintiff received the final disposition from Guatemala. The prosecutor's office appealed the dismissal, and the Court of Appeals affirmed the dismissal, rendering the case irrevocably dismissed. Accordingly, Pastor Hugo is fully exonerated and no longer the subject of any warrant in Guatemala.

42.    On May 30, 2024, the Ninth Circuit issued an order to remand Pastor Hugo's case to the BIA. The case remains pending with the BIA today.

---

[14] Exh. 10, ICE press release re removal of Pastor Hugo (3/14/2023), pp. 52-53
[15] Id.
[16] Exh. 5, CCF decision cancelling red notice (11/04/2022), p. 39; Exh. 6, INTERPOL Red Notice (printed 8/18/2021), p. 40

43.     On December 18, 2024, Pastor Hugo attempted to reunite with his family in Cancun, Mexico. Pastor Hugo has a valid Mexican visa. Upon landing at the Cancun airport, Pastor Hugo was turned away by Mexican immigration authorities. No exact reason was given.

44.     The CBP and DHS have an active data-sharing initiative with Mexican immigration authorities, including the Instituto Nacional de Migracion ("INM"), the Mexican government agency responsible for controlling and supervising migration into Mexico.  This system was first implemented in December 2017.

45.     The data-sharing initiative aims to reconcile entry and exit data that indicate a lawful exit from either country to support both countries' immigration and law enforcement missions.

46.     It is believed that this data-sharing initiative transmitted information about Pastor Hugo's removal from the United States to INM, thereby leading to his denial of entry into Mexico.

47.     Pastor Hugo returned to Guatemala after being turned away by Mexican immigration authorities, where he remains to this day.

48.     The Constitution and federal law prohibit unlawful arrest, detention, and deportation. ICE's violation of these principles caused Pastor Hugo significant harm.

49.     ICE's unlawful arrest, detention, and deportation of Pastor Hugo caused him to endure severe emotional distress, nightmares of persecution and death. Guatemala has consistently ranked among the top 20 countries for homicide rates for over 20 years. Due to extensive media coverage of this case in the U.S. and Guatemala, Pastor Hugo reasonably believes he remains a target of former leftist rebels and their supporters, who, despite the decisions of the Guatemalan courts, associate him with the disappearance of Edgar F. Garcia in 1984.

50.     As a result of ICE's actions, Pastor Hugo and his family members are left financially ruined. He depends on his wife's remittance for support.   He is unable to work and lives in obscurity, seldom going outside in fear for his personal safety.

51.      Accordingly, Pastor Hugo brings this action under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) and 2671-2680, to vindicate his rights and seek damages for ICE's indefensible and reprehensible conduct in wrongfully arresting, detaining, and deporting him.

**JURISDICTION AND VENUE**

-8-

52. This is a civil rights action in which Plaintiff seeks damages, both compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys' fees, and such other and further relief as this court deems equitable and just.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### Federal Tort Claims Act – 28 U.S.C. § 1346(b) – False Imprisonment

### *Against All Defendants*

53. All prior allegations are incorporated as though set forth fully herein.

54. In California, to state a false imprisonment claim, a plaintiff must allege and prove that the defendant unlawfully violated the personal liberty of the plaintiff.

55. ICE Officers intentionally detained the plaintiff without legal justification or probable cause.

56. ICE Officers have no authority to arrest lawful permanent residents solely based on a foreign arrest warrant or an INTERPOL Red Notice.

57. Defendant has no authority to deport Plaintiff Pastor Hugo Gomez, who was granted LPR status, with no criminal conviction. 8 U.S.C. § 1227(a)(2).

58. As a result of the lack of Defendant's authority to arrest, detain, and deport a lawful permanent resident, Defendant has unlawfully violated the personal liberty of Plaintiff Pastor Hugo Gomez.

59. As a direct and legal result of Defendants' acts and omissions, Plaintiff was confined by ICE for a period of three years, six months, and nineteen days, and was subsequently deported to Guatemala without legal justification. This prolonged and unlawful restraint upon Plaintiff Pastor Hugo Gomez's liberty constitutes false imprisonment under California law, and plaintiff thereby suffered injuries.

### SECOND CAUSE OF ACTION

### Federal Tort Claims Act – 28 U.S.C. § 1346(b) – Negligence

***Against All Defendants***

60.    All prior allegations are incorporated as though set forth fully herein.

61.    "In order to establish negligence under California law, a plaintiff must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1204 (9th Cir. 2003) (citing *Martinez v. Pacific Bell*, 225 Cal. App.3d 1557, 1564 (Cal. Ct. App. 1990)).

62.    Defendant has a duty to act with reasonable care in exercising its authority, and Defendant owed this duty of care to Plaintiff Pastor Hugo Gomez.

63.    Defendant breached this duty by arresting Plaintiff based on unauthenticated foreign documents, including the INTERPOL Red Notice

64.    Defendant further breached this duty by continuing to detain Plaintiff even after INTERPOL issued a certificate on October 28, 2022, stating that Plaintiff was not subject to any Red Notice.

65.    Defendant further breached this duty by continuing to detain Plaintiff even after the INTERPOL Commission for the Control of INTERPOL's Files (CCF) formally canceled any previous Red Notice due to insufficient evidence, on November 4, 2022.

66.    Therefore, when Defendant detained and continued to detain Plaintiff, Defendant failed to act with reasonable care in exercising its authority to detain lawful permanent residents.

67.    Defendant's removal of Plaintiff from the United States was predicated on the Red Notice. Defendant further breached their duty of reasonable care by removing Plaintiff from the United States despite the fact that INTERPOL canceled the Red Notice. Defendant provided no justification for Plaintiff's removal.

68.    Defendant therefore failed to act with reasonable care in exercising its authority to remove lawful permanent residents from the United States when Defendant removed Plaintiff to Guatemala on March 7, 2023.

69.    Plaintiff Pastor Hugo Gomez suffered harm as a result of Defendant's actions and omissions, including but not limited to loss of liberty, significant humiliation, fear, trauma, stress, disruption, emotional distress, economic loss, and other damages.

-10-
COMPLAINT FOR DAMAGES

70.     The acts and omissions of Defendant in failing to exercise reasonable care to ensure that its agents were not detaining and removing a lawful permanent resident without justification actually and proximately caused these injuries to Plaintiff.

71.     Defendant United States of America is liable for these acts and omissions under the FTCA.

## THIRD CAUSE OF ACTION

### Federal Tort Claims Act – 28 U.S.C. § 1346(b) – Intentional Infliction of Emotional Distress

### (IIED)

### *Against all Defendants*

72.     All prior allegations are incorporated as though set forth fully herein.

73.     In California, the elements for the tort of intentional infliction of emotional distress are: "(i) outrageous conduct by defendant, (ii) an intention by defendant to cause, or reckless disregard of the probability of causing, emotional distress, (iii) severe emotional distress, and (iv) an actual and proximate causal link between the tortious conduct and the emotional distress." *Nally v. Grace Community Church*, 47 Cal.3d 278, 300 (Cal. 1988).

74.     Defendant arrested and detained Plaintiff Pastor Hugo Gomez, a lawful permanent resident, without legal justification.

75.     Defendant's conduct was both extreme and outrageous. Arresting and detaining a lawful permanent resident for three-and-a-half years in immigration detention based on insufficient evidence is shocking and intolerable.

76.     Furthermore, Defendant kept Plaintiff detained even when new evidence became available that highlighted that he should be released.

77.     By arresting, detaining, and removing Plaintiff from the United States, Defendant isolated Plaintiff from his family, including his wife, children, and grandchildren.

78.     Defendant acted in intentional and reckless disregard of Plaintiff's rights by relying on discredited evidence to keep Plaintiff in detention for over three years and ultimately remove Plaintiff from the United States.

-11-
COMPLAINT FOR DAMAGES

79.     Plaintiff suffered severe emotional distress that was actually and proximately caused by Defendant's unlawful actions. Defendant deliberately kept Plaintiff in detention for years, causing Plaintiff's health to decline and creating fear as to his legal status and what would happen to him. It also caused him significant trauma, and Defendant's actions directly inflicted severe psychological strain on Plaintiff and his relationships with his family.

80.     Plaintiff continues to experience ongoing severe emotional distress and health deterioration as a result of Defendant's actions.

81.     Defendant United States of America is liable for these acts and omissions under the FTCA.

## FOURTH CAUSE OF ACTION

### Federal Tort Claims Act – 28 U.S.C. § 1346(b) – Abuse of Process

#### *Against All Defendants*

82.     All prior allegations are incorporated as though set forth fully herein.

83.     The federal agents referenced above used a civil process against Plaintiff to carry out his deportation.

84.     The federal agents used that process to accomplish a purpose for which it was not designed, namely to deport Plaintiff to a country without due process.

85.     The federal agents misuse of process caused harm to Plaintiff.

## FIFTH CAUSE OF ACTION

### Federal Tort Claims Act – 28 U.S.C. § 1346(b) – Loss of Spousal Consortium

#### *Against All Defendants*

86.     All prior allegations are incorporated as though set forth fully herein.

87.     In California, a spousal loss of consortium claim requires four elements: (1) a valid and lawful marriage existing at the time of the injury; (2) a tortious injury inflicted on the plaintiff's spouse; (3) a demonstrable loss of consortium suffered by the plaintiff; and (4) a loss that was proximately caused by the defendant's wrongful act.

88.    From January 29, 1991, to the present, Plaintiff Hugo Gomez was lawfully married to his wife, Leonor Gomez, until and including the time of his removal.

89.    Leonor Gomez has been injured by being deprived of the care, comfort, protection, society, support, services, and consortium of her husband, Plaintiff Hugo Gomez.  Furthermore, Leonor Gomez is compelled to send Hugo Gomez remittances regularly to cover his basic living expenses.

90.    As a result of Defendant's wrongful arrest and deportation to Guatemala, Plaintiff Hugo Gomez has been deprived of the care, comfort, protection, society, support, services, and consortium of his wife and thereby has suffered injuries.

## SIXTH CAUSE OF ACTION

### Monell Liability

*Against Defendant ICE*

91.    All prior allegations are incorporated as though set forth fully herein.

92.    In order to establish liability for governmental entities under Monell, a plaintiff must prove that (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.

93.    ICE maintained policies, customs, and practices that caused the deprivation of Plaintiff's constitutional rights, including his rights under the Fourth and Fifth Amendments to be free from unlawful seizure and detention without due process.

94.    ICE has maintained a policy or custom of arresting, detaining, and removing lawful permanent residents based on unauthenticated foreign documents without conducting adequate investigation into the reliability or authenticity of such documents.

95.    Defendants' policy was applied to Plaintiff when ICE arrested and detained him based on unauthenticated documents from Guatemala that were obtained unofficially by a non-governmental organization and had not been properly authenticated or subjected to proper chain of custody verification.

96.     ICE failed to adequately train its officers and employees regarding the requirement to authenticate foreign documents before using them as grounds for arrest, detention, or removal of lawful permanent residents.

97.     ICE failed to adequately train its officers and employees regarding the procedures for verifying the reliability and current validity of foreign law enforcement records.

98.     ICE policymakers were on actual or constructive notice that their failure to implement adequate training and procedures would substantially certainly result in violations of constitutional rights, yet Defendants failed to act.

99.     ICE failed to establish and implement adequate procedures and safeguards to prevent the unlawful arrest, detention, and removal of lawful permanent residents based on unreliable foreign documents.

100.    ICE's policies, customs, and practices, and its failures to train, supervise, and implement adequate procedures, reflect deliberate indifference to the constitutional rights of lawful permanent residents.

101.    Defendants relied on unauthenticated foreign documents without verification procedures, and failed to reassess detention when exculpatory evidence emerges, resulted in the unlawful detention and removal of Plaintiff.

102.    As a direct and proximate result of Defendants policies, customs, practices, and failures described above, Plaintiff suffered severe harm, including loss of liberty for approximately three years, separation from his family, severe emotional distress, trauma, humiliation, fear, economic losses, and other damages.

## SEVENTH CAUSE OF ACTION

### Violations of the Fourth Amendment – Bivens Action

#### *Against All Defendants*

103.    All prior allegations are incorporated as though set forth fully herein.

COMPLAINT FOR DAMAGES

104.    The United States Supreme Court, in *Bivens*, recognized a private damages action against federal officials for constitutional torts committed by such officials while acting under color of federal authority.

105.    The actions and conduct of defendant Does 1 through 100, in their individual capacity as federal agents, violated the rights of plaintiff to be free from unreasonable arrest and detention under the Fourth Amendment.

**EIGHTH CAUSE OF ACTION**

**Violations of the Fifth Amendment – Bivens Action**

*Against All Defendants*

106.    All prior allegations are incorporated as though set forth fully herein.

107.    The actions and conduct of defendant Does 1 through [], in their individual capacity as federal agents, violated the rights of plaintiff to due process of law under the Fifth Amendment.

**NINTH CAUSE OF ACTION**

**Violation of the Bane Act – Cal. Civil Code § 52.1**

*Against All Defendants*

108.    All prior allegations are incorporated as though set forth fully herein.

109.    In California, to state a Bane Act Claim, a plaintiff must allege and prove that (1) the defendant must have intentionally interfered or attempted to interfere with the plaintiff's state or federal constitutional legal rights and (2) the interference must have been carried out through threats, intimidation, or coercion.

110.    ICE officials interfered or attempted to interfere by threats, intimidation, or coercion with Plaintiff's rights under state and federal laws and under the state and federal Constitution, including, without limitation, his rights under the Fourth Amendment of the United States Constitution.

111.    Defendants' conduct caused Plaintiff extreme emotional distress.

COMPLAINT FOR DAMAGES

112.    As a result of their conduct, Defendants are liable for Plaintiff's injuries, either because they were integral participants in the misconduct or because they failed to intervene when they had the opportunity and duty to do so to prevent these violations.

113.    Plaintiff alleges that the acts of the Defendants were willful, malicious, intentional, oppressive, reckless, and/or done in willful and conscious disregard of Plaintiff's rights, welfare, and safety, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

114.    As a direct and legal result of Defendants' acts and omissions, Plaintiff has suffered damages, including, without limitation, pain and suffering, extreme mental and emotional distress, attorneys' fees, costs of suit, loss of earnings, and other pecuniary losses not yet ascertained.

## **PRAYER FOR RELIEF**

Respectfully submitted,

Dated:  _____

HAVEN LAW GROUP, APC

/s Daniel Huang

_____
Daniel Huang
Attorney for Plaintiff

COMPLAINT FOR DAMAGES

Gomez Osorio v. USA

**List of Exbibits**

| Document (Exhibit "Exh.") | Pages |
|---|---|
| Exh. 1, DHS ICE receipt of FTCA letter (3/11/2025) | 19-20 |
| Exh. 2, ICE letter rejecting FTCA claim (5/28/2025) | 21-23 |
| Exh. 3, ICE targets pastor after Red Notice, Los Angeles Times (9/17/2021) | 25-33 |
| Exh. 4, Daily Mail Online (UK) article about Pastor Hugo (10/15/2020) | 34-38 |
| Exh. 5, CCF decision cancelling red notice (11/04/2022) | 39 |
| Exh. 6, INTERPOL Red Notice (printed 8/18/2021) | 40 |
| Exh. 7, Board of Immigration Appeals decision dated 7/22/2021 | 41-49 |
| Exh. 8, Certificate of Marriage in California (1/19/1991) | 50 |

COMPLAINT FOR DAMAGES

| Document (Exhibit "Exh.") | Pages |
|---|---|
| Exh. 9, 9th circuit order to remand 5.30.24 | 51 |
| Exh. 10, ICE press release re removal of Pastor Hugo (3/14/2023) | 52-53 |
| Exh. 11, Notice to Appear issued by DHS (8/20/2019) | 54-57 |

COMPLAINT FOR DAMAGES